UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>DARMUS J. DALTON,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 6:12-CR-01-ART-HAI-1<br>No. 6:14-CV-7382-ART-HAI<br><br>RECOMMENDED DISPOSITION |

*** *** *** ***

On November 24, 2014, pro se Defendant Darmus Dalton filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  D.E. 351.  The United States filed a response in opposition to Defendant's motion on April 2, 2015.  D.E. 388. Defendant filed a reply on April 27, 2015.  D.E. 399.  Pursuant to local practice and 28 U.S.C. § 636(b)(1)(B), this matter was referred to the undersigned for a recommended disposition.  D.E. 351-3.  After conducting an initial review, the Court held an evidentiary hearing on December 17, 2015.  D.E. 420.  For the reasons that follow, Defendant has failed to establish that he is entitled to relief pursuant to 28 U.S.C. § 2255.  Therefore, the Court **RECOMMENDS** that his section 2255 motion (D.E. 351) be **DENIED.**  The Court further **RECOMMENDS** that no Certificate of Appealability be issued.

## I.  BACKGROUND

On January 26, 2012, a federal grand jury returned an indictment as to Defndant Darmus J. Dalton, Craig West, Blake Gumm, William Padgett, Christi Combs, Joseph Stripling, and Andrea Ridner.  D.E. 1.  Defendant was charged with conspiracy to knowingly and intentionally distribute, and possess with intent to distribute, a quantity of pills containing oxycodone, a

schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. *Id.* This charge carried a statutory maximum of twenty years imprisonment, a $1,000,000 fine, and at least three years of supervised release. *See* 21 U.S.C. § 841(b)(1)(C).

At Dalton's initial appearance and arraignment on February 3, 2012, Scott Foster appeared as retained counsel on behalf of Defendant, replacing appointed counsel Paul Croley. D.E. 32. On February 7, 2012, Scott Foster moved to withdraw, and Robert Norfleet entered his appearance as retained counsel on behalf of Defendant. D.E. 47. Defendant was remanded into custody following a detention hearing. *See id.*; D.E. 53. Defendant's three-day trial began on May 7, 2012. D.E. 184; D.E. 190; D.E. 194. Defendant, and two co-defendants, were found guilty of conspiracy to knowingly and intentionally distribute, and possess with intent to distribute, a quantity of pills containing oxycodone. D.E. 198.

The United States Probation Office issued a Presentence Investigation Report (PSR) that determined Defendant to have a total offense level of 32 and a criminal history category of III, which resulted in a Guidelines Range of imprisonment of 151 to 188 months. D.E. 257 at 17. Defendant, through counsel, objected to the PSR on five grounds. First, Defendant asserted that he was innocent of the crime. *Id.* at 20. Second, Defendant disagreed with the drug quantity that was attributed to him. *Id.* Further, Defendant objected that he should not be assessed a four-point increase his offense level for being an organizer and leader in the conspiracy. *Id.* at 21. Defendant also objected to the assessment of two criminal history points for committing "the instant offense while under a criminal justice sentence for Rape 3rd Degree." *Id.* Finally, Defendant objected to the suggestion in the PSR that there was an aggravating factor to justify sentencing Defendant higher than his Guidelines Range. *Id.* at 21-22. The United States also

2

objected to the drug quantities listed in the PSR on the basis that the "amount of drugs should be estimated at a level 32." D.E. 221 at 4.

District Judge Thapar held an evidentiary hearing and a sentencing hearing on September 11, 2012. D.E. 239; D.E. 240. Based on testimony from Kentucky State Police Detective Anthony Janutolo and the evidence presented at trial, Judge Thapar sustained the United States' objection to the amount of drugs Defendant was responsible for and overruled Defendant's objection. D.E. 266 at 58-61. Judge Thapar found that the United States met "its burden of finding by a preponderance of the evidence that [Defendant] was involved in a conspiracy involving at least the equivalence of 200,000 milligrams of OxyContins[.]" *Id.* at 59.

Next, Judge Thapar overruled Defendant's objection that he should not be assessed a four-point increase for being an organizer and leader in the conspiracy, and denied as moot Defendant's objection that he was not under a criminal justice sentence. *Id.* at 72, 77. Finally, Defendant's objection that he was innocent of the crime was denied based on the jury verdict, and Defendant's final objection that there was not an aggravating factor to justify sentencing higher than his Range was taken into account in sentencing. *Id.* at 46-47, 77.

Judge Thapar found an offense level of 36 with a criminal history category of III, which placed him in a Guidelines Range of 235 to 293 months of imprisonment, with a statutory cap of 240 months. *Id.* at 121-22. Judge Thapar also considered the Range as if Defendant's offense level was 35, which Range would have been 210 to 262 months of imprisonment. *Id.* at 133. Ultimately, Judge Thapar sentenced Defendant to 235 months of imprisonment, mental health treatment, and three years of supervised release to follow imprisonment. D.E. 254.[1]

---

[1] On March 6, 2015, Defendant's sentence was reduced to 210 months pursuant to 18 U.S.C. § 3582(c)(2). D.E. 380.

Defendant filed a notice of appeal on September 24, 2012.  D.E. 255.  Dennis Belli was appointed as appellate counsel by the Sixth Circuit on October 18, 2012.  D.E. 262.  On appeal, Defendant alleged two errors by the district court.  First, Defendant argued that the cumulative effect of improper expert opinion testimony and government misconduct during closing arguments violated his right to a fair trial.  D.E. 340 at 2.  In reviewing this argument, the Sixth Circuit found that Defendant's claim of cumulative error fails as "there are no errors to cumulate." *Id.* at 12.

Additionally, Defendant challenged the procedural reasonableness of his 235 month sentence on two separate grounds.  *Id.* at 12.  First, Defendant argued that the district court's drug quantity finding was erroneous.  *Id.* at 13-14.  The Sixth Circuit found that this argument was meritless as "the district court's conservative estimate that [Defendant] was responsible for 200,000 milligrams of oxycodone was supported by competent evidence in the record."  *Id.* at 17.  Second, Defendant challenged the four-level, aggravating-role enhancement applied due to his role as an organizer or leader of the crime pursuant to U.S.S.G. § 3B1.1(a).  *Id.* at 18.  The Sixth Circuit found that the district court correctly applied the enhancement because the conspiracy involved five or more participants, and there was sufficient evidence in the record that Dalton was an organizer or leader of the conspiracy.  *Id.* at 19.  Moreover, the Sixth Circuit rejected Defenant's argument that the enhancement did not apply because he was only "fronting" the drugs.  *Id.* at 19-20.  Finding no error, the Sixth Circuit affirmed Defendant's conviction.  *Id.* at 20.  The Supreme Court of the United States denied Defendant's petition for a writ of certiorari on October 20, 2014.  D.E. 349.

Defendant filed this § 2255 motion on November 24, 2014.  D.E. 351.  In his motion and memorandum, Defendant asserts five Grounds for relief:

4

1)      Ineffective assistance of counsel during plea negotiations.  D.E. 351-1 at 3.

2)      Ineffective assistance of appellate counsel for failure to assert an *Alleyne* argument on direct appeal.  *Id.* at 4.

3)      Ineffective assistance of appellate counsel for failure to assert an argument about the use of the modified categorical approach.  *Id.* at 6

4)      Ineffective assistance of counsel related to Defendant's sentencing enhancement for his leadership role.  *Id.* at 7.

5)      Ineffective assistance of counsel for Failing to argue that Defendant's sentencing violated the Double Jeopardy Clause.  *Id.* at 8.

The Court held an evidentiary hearing concerning Ground One on December 17, 2015.  D.E. 420.  Each Ground will be addressed in turn.

## II. BACKGROUND

### A. Right to Collateral Attack

Under 28 U.S.C. § 2255, a federal prisoner may seek habeas relief because a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such a sentence, or the sentence exceeds the maximum authorized by law.  28 U.S.C. § 2255.  To prevail on a § 2255 motion alleging constitutional error, a defendant must establish that the error had a "substantial and injurious effect or influence on the proceedings."  *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).  By contrast, to obtain habeas relief based on an alleged non-constitutional error, a defendant must establish a "fundamental defect which inherently results in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process."  *Id*. at 488 (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)).  As the § 2255 movant, a defendant bears the burden

5

of proving his or her allegations by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

Additionally, the Court recognizes that Defendant is proceeding pro se, or without the assistance of an attorney. Pro se motions receive a comparatively lenient construction by the Court. *Castro v. United States*, 540 U.S. 375, 381-83 (2003); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

### B. Ineffective Assistance of Counsel

All five of Defendant's Grounds for relief are based on ineffective assistance of counsel. To successfully assert an ineffective assistance of counsel claim, a defendant must prove both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a defendant must prove ineffective assistance of counsel by a preponderance of the evidence). In order to prove deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. A defendant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 688. However, a defendant is not permitted to second-guess trial counsel's strategic decisions. *Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). Thus, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotations omitted). Notably, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.  In order to prove prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.  Courts may approach the Strickland analysis in any order, and an insufficient showing on either prong ends the inquiry.  *Id.* at 697.

### 1.  Ground One:  Ineffective Assistance of Counsel During Plea Negotiations

In Ground One, Defendant alleges that defense counsel failed to inform him of "the government's offered plea deal of seven (7) years."  D.E. 351-1 at 3.  In his motion and supporting memorandum, Defendant provides no factual support for the existence of such a plea offer.  *See id.*  In his reply, however, Defendant alleges, under the penalty of perjury, that after his sentencing, while he and counsel were at the jail, "[c]ounsel stated 'I wish we had of took the deal.'"  D.E. 399 at 1.  According to Defendant, there were two plea offers: "1.) 7 years and cooperation; 2.) 10-13 year [sic] without cooperation[.]"  *Id.*  Defendant states that he would "have taken the offered (7) years."  D.E. 351-1 at 3.

A criminal defendant has the right to effective assistance of counsel during plea negotiations. *Missouri v. Frye*, 132 S. Ct. 1399, 1405 (2012).  A petitioner who claims that he

was denied effective assistance of counsel with regard to whether or not to plead guilty must first prove that counsel rendered constitutionally deficient performance. *Humphress v. United States*, 398 F.3d 855, 859 (6th Cir. 2005) (citing *Magana v. Hofbauer*, 263 F.3d 542, 547-48 (6th Cir. 2001)). "[A] defense attorney's failure to communicate a plea offer to his or her client constitutes deficient performance." *Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004) (citing *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003)). Second, in the context of a plea agreement not entered into, he must establish that:

> but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances, and also that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Lafler v. Cooper*, 132 S.Ct. 1376, 1385 (2012).

None of Defendant's counsel recall any plea offers as described by Defendant being made by the United States. *See* D.E. 388-1 (affidavit of Paul Croley) ("[t]here was no discussion regarding plea agreements between [Croley] and the United States Attorney's Office[.]"); D.E. 388-2 (affidavit of Scott Foster) ("[t]here were no plea negotiations between [Foster] and the United States Attorney's Office[.]"); D.E. 388-3 (affidavit of Robert Norfleet). Norfleet stated that he did not "recall ever receiving a plea agreement from the United States' [sic] government offering to recommend Defendant Dalton serve an 84 month sentence of imprisonment in exchange for a guilty plea[.]" D.E. 388-3 at 2. According to Norfleet, the only plea agreement that was offered by the United States was sent on March 27, 2012, would have had a Guidelines Range of "135 months to 293 months, capped at the statutory maximum of 240 months," and required that Defendant cooperate with the government." *Id.* at 3, 15. Norfleet stated that this

8

offer was rejected by Defendant and the matter proceeded to trial.  *Id.* at 3-4.  Norfleet further stated that he would have "certainly and immediately conveyed [the alleged seven year deal] to Defendant Dalton and would have both recommended and advised Defendant Dalton to have promptly accept [sic] [the alleged deal][.]".  *Id.*

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims."  *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (citations and internal quotation marks omitted).  To resolve this factual dispute, the Court conducted an evidentiary hearing on December 17, 2015.  D.E. 420.  Both Defendant and Norfleet testified at the hearing.

Norfleet testified that he had represented Defendant's wife in a state court matter, in which both Defendant and his wife were indicted on bribery charges.  *Evidentiary Hearing, December 17, 2015,* 4:36-5:02.[2]  Norfleet stated that during his representation of Defendant herein he may have discussed the outcome of the unrelated state bribery case with Defendant, however there was no discussion of any plea offer in the state case.  *Id.* at 15:21-59.  He testified that he received the March 27, 2012 plea offer from the United States, and that it would have required Defendant to admit to being a "ringleader" of a conspiracy to distribute oxycodone.  *Id.* at 6:57-7:25.  Additionally, the plea agreement contained a 32 base offense level, a four-point enhancement for his leadership role, and would allow for a three-point reduction for acceptance of responsibility.  *Id.* at 7:26-46.  Finally, the sealed supplement would have required Defendant to cooperate with the United States.  *Id.* at 7:46-51.

Norfleet testified that, once he received the plea offer via e-mail, he took a physical copy to the detention center to discuss it with Defendant.  *Id.* at 7:55-8:26.  According to Norfleet,

---

[2] Record citations herein to the hearing correspond with the "position" field of the audio file as indicated in the audio player, meaning the elapsed time of the proceeding instead of the time of day.

Defendant was not willing to cooperate with the United States in any way, and rejected the plea agreement by telling Norfleet to "tell the prosecutor that I would take a chicken dinner." *Id.* at 9:14-44. Norfleet stated that because Defendant was not going to cooperate, he did not make a recommendation about the plea agreement "one way or the other." *Id.* at 9:45-59. He stated that the discussion with Defendant regarding the plea offer was a "fairly short conversation" because Defendant was "adamant that he wanted to go to trial" and was "very assertive that he was not going to cooperate with the United States as a cooperating witness." *Id.* at 14:08-43. Norfleet stated that this was the only plea agreement he received from the United States. *Id.* at 9:59-10:03. Specifically, he testified that the United States never offered a binding plea agreement of seven years. *Id.* at 30:33-40.

Norfleet testified that Defendant was interested in a plea deal that would get him "down into the seven to ten year range." *Id.* at 10:09-20. He said that he informed Defendant that was not likely unless he cooperated, and that Defendant was "100% adamant that he was not going to cooperate." *Id.* at 10:20-30. Norfleet stated that Defendant's perception of the case was that the evidence against him was hearsay and "weak." *Id.* at 13:54-14:07.

Norfleet further testified that, following sentencing, he did not say to Defendant that he wish they had taken the deal. *Id.* at 16:15-24. Norfleet testified that he and Defendant had a conversation following sentencing about Defendant potentially cooperating, and Defendant indicated that he wished he had taken the plea deal. *Id.* at 16:28-45. However, he testified that after discussing that there were post-conviction procedures in order to get a sentencing reduction if he cooperated, Defendant did not express any interest in doing that. *Id.* at 16:45-17:00. He stated that he did not tell Defendant that he could get "seven years for cooperation or ten to thirteen years for noncooperation." *Id.* at 17:01-45.

Defendant testified that he never saw the March 27, 2012 plea agreement before trial nor had Norfleet discussed the document with him at any time. *Id.* at 41:45-56. He stated that he never had any discussion with Norfleet about a plea bargain in his federal case. *Id.* at 42:16-24. According to Defendant the "only plea deal I was ever discussed [with Norfleet] was a case I had pending in the state court." *Id.* at 41:56-42:07. He testified that Norfleet told him that the case was based on "circumstantial evidence" and that he could "beat it." *Id.* at 43:26-33. Moreover, he stated that he would have taken the March 27, 2012 plea agreement had it been presented to him because of the strength of the case against him and his guilt. *Id.* at 48:26-49. He further stated that he was willing to cooperate. *Id.* at 49:00-03.

Defendant testified that Norfleet came to the detention center a few days after sentencing and said "that [Norfleet] wished we'd had of took a deal." *Id.* at 46:31-43. According to Defendant, Norfleet told him that the United States "offered like seven years to cooperate, ten to thirteen if you don't cooperate." *Id.* at 46:45-52. He testified that they he did not say anything in response. *Id.* at 47:11-23.

Defendant further testified that he never told Norfleet he would not cooperate with the government because Norfleet never brought that to his attention. *Id.* at 43:33-52. According to Defendant he told Foster (who was representing him on the state charge) and Norfleet "that I would not cop out for a chicken dinner." *Id.* at 45:59-46:12. He stated that this comment was in reference to the state plea agreement, not to the federal plea offer. *Id.* at 46:13-21. He further stated that Norfleet and Foster would come to the jail together to see him, and they were both in the room when he made the chicken dinner comment in reference to the state plea offer. *Id.* at 1:09:01-24. Defendant stated that in the state court case he ultimately took a plea deal of ten years. *Id.* at 42:10-15.

11

Defendant testified that he decided to take a plea deal in his state trial after his federal trial had concluded.  *Id.* at 1:08:29-49.  He testified that, before his federal case, he had been convicted of "three or four" state crimes.  *Id.* at 1:09:42-10:03.  Further, he stated that he had plead guilty in "two or three" of those cases.  *Id.* at 1:10:03-14.  Moreover, he said that he went to trial on one of his previous state cases.  *Id.* at 1:10:14-21.  Defendant testified that prior to his federal case the maximum penalty that he was looking at on any state charge was ten years.  *Id.* at 1:14:25-33.  Moreover, Defendant admitted that he knew he was looking at twenty years in prison on his federal charge but never asked Norfleet about the possibility of pleading guilty.  *Id.* at 1:14:59-15:25.

Based on the briefing and the evidence presented at the evidentiary hearing, Defendant has not proven that Norfleet failed to convey any plea offer to Defendant.  The Court rejects Defendant's testimony due to a lack of credibility.  As suggested by the Sixth Circuit, the Court details its reasoning as to this credibility determination.  *See United States v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990).

Defendant testified that, not only did Norfleet fail to bring forth plea agreements offered by the government, but at no point during his federal prosecution did he even ask Norfleet about the possibility of entering a plea agreement.  This is unbelievable for several reasons.  First, as Defendant testified, he has a lengthy criminal history in state court.  This includes, according to Defendant, "three or four" criminal convictions.  However, a review of his PSR reveals at least eight convictions in his criminal history.  *See* D.E. 257 at 11-12.  In at least two of these cases Defendant testified that he plead guilty, and went to trial in another case, clearly indicating knowledge and experience concerning pleading guilty versus proceeding to trial.  It is not believable to the Court that Defendant, despite extensive familiarity with the criminal justice

12

system and the plea bargaining process, would not at least inquire as to the possibility of pleading guilty with his defense counsel, especially given his high sentencing exposure. Defendant had, on multiple occasions in the past, taken advantage of the opportunity to enter into a plea agreement, yet would have the Court believe that he did not even discuss this possibility with his counsel at any point in the most significant criminal case he had ever confronted.

Furthermore, Defendant testified as to the seriousness of the charge against him in this case. He acknowledged that the maximum statutory penalty he was facing was at least twice as much as the maximum he had faced on previous prosecutions in state court. It is unbelievable to the Court that Defendant would not at least discuss pleading to the charges in an effort to avoid such a severe penalty. This is especially true when considering that Defendant knew of the strength of the United States' case against him. Defendant stated that he was aware of the testimony against him and of his actual guilt to some of the allegations. Given the severity of the penalties, and the acknowledged strength of the government's case, it is simply unbelievable that Defendant never brought up attempting to get a plea deal.

Moreover, Defendant, in an attempt to explain Norfleet's specific memory of plea discussions with him, stated that he made the "chicken dinner" comment in reference to plea discussions he was having with Foster regarding his state charges. Defendant stated that Norfleet was in the room while these discussions were ongoing with Foster. Assuming this is true, it is unbelievable that Defendant would not have asked Norfleet about any possible pleas in his case.

Finally, inconsistency in Defendant's filings further weakens his credibility. In Defendant's memorandum in support of his § 2255 motion, Defendant alleges that Norfleet failed to bring forth a seven-year plea offer from the government. D.E. 351-1 at 3. However, in

his reply, Defendant asserts that he found out about two separate plea offers that were not disclosed: one was seven years with cooperation and the other was ten to thirteen years without cooperation.  D.E. 399 at 1.  If Defendant knew that counsel had failed to communicate more than one plea offer, as he alleges in his reply, it is reasonable to conclude he would have included it in § 2255 motion and initial memorandum.

To be clear, the Court is not putting the burden on Defendant or any accused to initiate plea discussions as a prerequisite to relying upon the right to effective assistance of counsel in plea negotiations.  Clearly the law requires proposed plea agreements to be conveyed by counsel to the accused.  *See Guerrero v. United States*, 383 F.3d 409, 416 (6th Cir. 2004).  Instead, the Court rejects Defendant's testimony overall—including that Norfleet did not convey any offer to him—because his testimony as a whole, particularly that he did not initiate plea discussions with Norfleet, is not credible.  Having rejected Defendant's version, the Court accepts Norfleet's version of the disputed events.

Based on the record and the evidence that was presented at the evidentiary hearing, Defendant has not met his burden to establish that Norfleet failed to bring forth any plea offer.  Thus, he has failed to establish deficient performance of counsel.  This claim fails.

### 2.  Ineffective Assistance of Appellate Counsel for Failure to Assert an *Alleyne* Argument

Defendant's second Ground for relief is ineffective assistance of appellate counsel for failing to assert the argument that *Alleyne v. United States*, 133 S.Ct. 2151 (2013) applied to his case.  According to Defendant "[t]here is no amount of drugs in the indictment and therefore a violation of <u>Alleyne's</u> Precendent" occurred.  D.E. 351-1 at 5.  Defendant states that "because the finding by the Court of which statute to sentence on increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a

reasonable doubt." D.E. 399 at 4. Thus, according to Defendant, "[t]he judge rather than the jury, found the "element" thus violating petitioner's Sixth Amendment Rights." *Id.*

In the context of ineffective assistance of appellate counsel, the *Strickland* standard controls. In order to prove prejudice, a defendant "must demonstrate that, but for counsel's poor performance, 'there is a reasonable probability' the result of his appeal would have been different." *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Strickland*, 466 U.S. at 694). "Appellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit." *Id.* (citing *Greer v. Mitchell*, 264 F.3d 633, 676 (6th Cir. 2001)). Further, "appellate counsel is not required to raise every non-frivolous issue on appeal." *Caver v. Straub*, 349 F.3d 340, 344 (6th Cir. 2003).

Here, Defendant cannot establish deficient performance. The Sixth Amendment guarantees the accused a right to a "speedy and public trial, by an impartial jury…." U.S. Const. amend. VI. Together with due process, this right requires criminal convictions be based upon "a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States v Gaudin*, 515 U.S. 506, 509-510 (1995). "Generally, the district court exercises discretion in sentencing a defendant." *United States v. Martin*, 526 F.3d 926, 942 (6th Cir. 2008) (citing *United States v. Booker*, 543 U.S. 220, 233 (2005)). However, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Moreover, any "[f]acts that increase the mandatory minimum sentence are therefore elements and must be submitted to the jury and found beyond a reasonable doubt." *Alleyne v. United States*, 133 S. Ct. 2151, 2158 (2013).

Defendant's argument is that the District Court's finding as to drug quantity violated his Sixth Amendment rights because there was no amount of drugs listed in the indictment, and the findings by the Court as to the quantity of drugs increased the penalty to which he was subjected. Defendant's arguments however, are incorrect. First, Defendant's reliance on *Alleyne* is misplaced. *Alleyne* held that any fact that increases the mandatory minimum sentence must be submitted to the jury and found beyond a reasonable doubt. *Id.* Defendant was convicted of conspiracy to distribute, and possess with intent to distribute, a quantity of pills containing oxycodone, a schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. D.E. 198. This carried a maximum penalty of 20 years and no mandatory minimum sentence. *See* 21 U.S.C. § 841(b)(1)(C) ("[i]n the case of a controlled substance in schedule I or II...except as provided in subparagraphs (A), (B), and (D), such person shall be sentenced to a term of imprisonment of not more than 20 years[.]"). As the statute does not carry a mandatory minimum sentence, the requirements of *Alleyne* do not apply, any reliance on *Alleyne* would have been meritless, and therefore appellate counsel was not deficient in failing to do so.

Second, Defendant claims that the district court's finding as to drug quantity increased the statutory maximum authorized by the jury verdict. *See* D.E. 399 at 4. Therefore, according to Defendant, under *Aprrendi*, drug quantity was an element that had to be found beyond a reasonable doubt by the jury. *Id.* This argument also fails. Defendant is correct in his assertion that *Apprendi* requires any fact, besides a prior conviction, that increases the statutory maximum be submitted to the jury and proven beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490. The findings challenged by Defendant relate directly to sentencing enhancements under the Guidelines, which must be proven by a preponderance of the evidence. *United States v.*

16

*Bowling*, 427 F. App'x 461, 464 (6th Cir. 2011) (citing *United States v. Mickens*, 453 F.3d 668, 673 (6th Cir. 2006)).  The Sixth Circuit has "repeatedly held that *Apprendi* permits" the term of imprisonment imposed to be based on drug quantity findings at sentencing by a preponderance of the evidence "so long as the resulting sentence does not exceed the statutory maximum established through the jury verdict alone."  *United States v. Zidell*, 323 F.3d 412, 428 (6th Cir. 2003).

Here, the statutory maximum permitted by the jury's verdict was twenty years.  *See* 21 U.S.C. § 841(b)(1)(C).  Defendant's sentence of 235 months is below that statutory maximum, which Judge Thapar well understood (D.E. 266 at 133), and the statutory maximum was never increased based upon the district court's drug quantity finding.  Thus, there was no *Apprendi* error whatsoever.  Therefore, Defendant cannot prove deficient performance or prejudice because any argument on appeal on this basis would have been meritless.

Moreover, to the extent that Defendant is arguing that the punishment should have been governed by 21 U.S.C. § 841(b)(1)(D), he is incorrect.  *See* D.E. 351-1 at 5.  This section applies to offenses involving "less than 50 kilograms of marihuana, except in the case of 50 or more marihuana plants, regardless of weight, 10 kilograms of hashish, or one kilogram of hashish oil[.]"  21 U.S.C. § 841(b)(1)(D).  Defendant was not charged with any offense relating to such drugs, therefore this claim is baseless.

Because Defendant cannot establish that any issue raised on appeal would have had any merit, he cannot establish ineffective assistance for failing to raise them.  Thus, this claim fails.

### 3. Ground Three:  Ineffective Assistance of Counsel for Failure to Assert an Argument about the use of the Modified Categorical Approach

Defendant's next claim of ineffective assistance of counsel, constituted liberally, is that appellate counsel was ineffective for failing to argue that "[t]he Courts use of the modified

categorical approach (MCA) was wrongly applied." D.E. 351-1 at 6. According to Defendant, he was subject to "an enhancement from level (1) to (3) under criminal history points" even though "[t]he government failed to establish that the state priors qualified to enhance on." *Id.* Defendant asserts that "the court's use of the wrongly applied (MCA) created a constitutional rub" and was "clearly in violation of federal law as stated in <u>Descamps</u>, and applies to the Guidelines cases." *Id.* The United States responds that Defendant was "not subject to any sentencing enhancement which required an analysis of the elements of any crime he has previously committed." D.E. 388 at 7.

Federal prisoners bear the burden of establishing that they are entitled to relief under 28 U.S.C. § 2255. *See McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence."). Here, Defendant has failed to meet this burden because he has not established how *Descamps v. United States*, 133 S.Ct. 2276 (2013), should apply in his case. *Descamps* dealt with the use of the modified categorical approach to determine whether a Defendant's past conviction constitutes a violent felony under the Armed Career Criminal Act (ACCA). *See Descamps*, 133 S.Ct. at 2281.

Defendant alleges that his sentence was incorrectly enhanced because the modified categorical approach was wrongly applied in his case. However, he does not provide any meaningful discussion as to how such error occurred. Moreover, a review of Defendant's PSR and a transcript of his sentencing reveal that Defendant was not subject to any sentencing enhancement under the ACCA, nor was the modified categorical approach applicable in his case. *See* D.E. 257; D.E. 266. Defendant was assigned a criminal history category of III at sentencing,

18

but was not subject to any enhancements under Chapter Four of the Guidelines. *See* D.E. 257 at 10.

Therefore, without any specific citations to the record or any evidence whatsoever supporting this claim, Defendant has failed to establish that the modified categorical approach was even applied in his case. Thus, he has not met his burden to establish ineffective assistance of appellate counsel for failing to raise this frivolous argument. This claim fails.

### 4. Ground Four: Ineffective Assistance of Counsel Related to Defendant's Sentencing Enhancement for his Leadership Role

Defendant's next claim for ineffective assistance of counsel is related to the District Court's application of a four-point sentencing enhancement under § 3B1.1(a) based on the finding that he was an organizer or leader of the criminal activity. D.E. 351-1 at 7. According to Defendant, the District Court "determined since '[Defendant] fronted the drugs.' He was a leader." *Id.* Defendant argues that his actions "did not provide sufficient ongoing leadership and coercive authority to warrant the four (4) points enhancement." *Id.* Further, Defendant alleges that "the government did not offer any evidence that [Defendant] assumed quintessential leadership warranting an increase." *Id.* at 8.

Defendant's brief does not allege how counsel, either trial or appellate, was ineffective in relation to this argument. To the extent Defendant is attempting to reargue the merits of the claim that was raised on direct appeal in his § 2255 motion, this claim is improper. A § 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exceptional circumstances, such as an intervening change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999). Defendant presented this argument to the Sixth Circuit on direct appeal. *See* D.E. 340 at 19-20. The court stated that Defendant was doing much more than "fronting"

19

the drugs and found that "but for his sponsorship and leadership some of the drug transactions forming part of the conspiracy would not have occurred." *Id.* at 20.  Thus, the Court concluded that "the district court did not err in applying the four-level enhancement." *Id.*

Moreover, to the extent Defendant is arguing that counsel was ineffective for failing to argue that the four-point enhancement was improper, he cannot establish either deficient performance or prejudice.  In addition to appellate counsel raising this issue on appeal, trial counsel raised it both in his presentence memorandum and extensively at Defendant's sentencing. *See* D.E. 217 at 4-5;  D.E. 266 at 61-65.  These arguments were rejected at both the trial and appellate levels.  Therefore, Defendant cannot plausibly argue that either appellate or trial counsel was deficient because they in fact raised this argument.  Likewise, he cannot allege that there was any prejudice because the arguments were rejected.  Thus, this claims fails.

### 5.  Ground Five: Ineffective Assistance of Counsel for Failing to Argue that Defendant's Sentencing Violated the Double Jeopardy Clause

Defendant's final Ground is for ineffective assistance of counsel because his "conviction and sentence was [sic] in violation of the Double Jeopardy Clause."  D.E. 351-1 at 8.  According to Defendant, the jury found Defendant guilty of "the fronting of the drugs" and then "the district court held a re-do trial and added to the conviction; '[Defendant] was guilty of being a leader of the conspiracy.'" *Id.* at 9.  This according to Defendant violated the double jeopardy clause because he "was punished twice in one proceeding." *Id.*

The double jeopardy Clause of the Fifth Amendment provides that "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb[.]"  U.S. Const. amend. V.  The Supreme Court has "found double jeopardy protections inapplicable to sentencing proceedings…because the determinations at issue do not place a defendant in jeopardy for an

'offense.'" *Monge v. California*, 524 U.S. 721, 728 (1998) (citing *Nicholas v. United States*, 511 U.S. 738, 747 (1994)) (internal citations omitted).  Moreover, sentencing enhancements have not been "construed as additional punishment for the previous offense; rather, they act to increase a sentence 'because of the manner in which [the defendant] committed the crime of conviction." *Id.* (quoting *United States v. Watts*, 519 U.S. 148, 154 (1997));  *see also United States v. Wheeler*, 330 F.3d 407, 413 (6th Cir. 2003).

Here, Defendant complains of enhancements applied during his sentencing.   Thus, pursuant to case law, Defendant did not have a legal basis upon which to make a double jeopardy argument against his sentence.  "[C]ounsel's failure to raise futile objections and arguments does not amount to constitutionally deficient performance." *Lyons v. Caruso*, 202 F.3d 269, at *3 (6th Cir. 1999) (Table).  Therefore, it was not deficient performance of counsel to elect not to raise a futile double jeopardy claim.   Moreover, even if deficient performance was established, Defendant cannot establish that the argument would have been successful and thus cannot establish prejudice.  This claim fails.

Finally, to the extent Defendant's § 2255 motion includes another Ground for relief for ineffective assistance of counsel for failure to conduct a "cursory review of the indictment, plea bargaining tactics, and the sentence estimate time of imprisonment," this claim fails as well. D.E. 351-1 at 9-11.  This section of Defendant's motion fails to allege any facts, with any specificity, as to how counsel was ineffective.  Thus, Defendant has failed to meet his burden here.  These cursory assertions do not entitle Defendant to relief.

### III. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This standard requires a

petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see Miller-El v. Cockrell*, 537 U.S. 322, 335–38 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). The Court has considered the issuance of a Certificate of Appealability as to each and every claim presented by Defendant. However, no reasonable jurist would find the assessments on the merits above to be wrong or debatable; thus, no Certificate of Appealability should issue.

## IV.  RECOMMENDATION

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Defendant's motion (D.E. 351) for 28 U.S.C. § 2255 relief. The Court also **RECOMMENDS** that the District Court **DENY** a Certificate of Appealability as to all claims.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings, Rule 8(b). Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 29th day of December, 2015.

Signed By:

*Hanly A. Ingram*

United States Magistrate Judge